SELCUK T. SAHIN *vs.* KENAN E. SAHIN.

Norfolk. September 10, 2001. - November 21, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Relief from judgment. *Divorce and Separation,* Modification of judgment, Reopening of proceedings, Division of property. *Fraud.*

In an action seeking relief from a prior divorce judgment by means of an independent equity action and pursuant to Mass. R. Civ. P. 60 (b) on the ground that compelling and exceptional circumstances necessitated review of the division of property between the parties, particularly the husband's alleged fraud in misrepresenting and failing to disclose significant financial information, the wife failed to present any evidence demonstrating that enforcement of the judgment would be manifestly unconscionable and, based on its review of the record, this court concluded that the husband's alleged fraud, and the wife's "newly discovered" evidence of such fraud, did not justify granting the wife equitable relief from the divorce judgment under rule 60 (b). [399-405]

A claim for relief from a divorce judgment alleging a party's misrepresentations and omissions pertinent to a matter before the court, without more, did not constitute fraud on the court for purposes of setting aside the judgment under Mass. R. Civ. P. 60 (b). [405-406]

Where a wife's proffered reasons for relief from a prior divorce judgment — the husband's alleged fraud in misrepresenting and failing to disclose significant financial information and the wife's "newly discovered" evidence of such fraud — clearly fell within subsections (2) and (3) of Mass. R. Civ. P. 60 (b), the wife was not entitled to relief under rule 60 (b) (6). [406-407]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on March 31, 1999.

The case was heard by *Eileen M. Shaevel,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward P. Leibensperger (Thomas O. Bean & Christa von der Luft* with him) for the plaintiff.

*Norman I. Jacobs (Robert J. Rutecki* with him) for the defendant.

SPINA, J. Selcuk T. Sahin (wife) filed a complaint against Kenan E. Sahin (husband) seeking relief from a prior divorce judgment by means of an independent equity action and pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974). She alleged that fraud perpetrated by the husband had resulted in a divorce judgment that was manifestly unconscionable. A Probate and Family Court judge granted the husband's motion for summary judgment and dismissed the wife's complaint. We granted the wife's application for direct appellate review and now affirm the judgment of the Probate and Family Court.

1. *Background.* In the underlying action, the wife filed for divorce from the husband on June 30, 1994, following twenty-eight years of marriage. The central issue at trial was the value of the husband's business, Kenan Systems Corporation (KSC), a computer company founded in 1982 that developed billing software used primarily by telecommunications companies. Expert testimony was presented by each party, including a balance sheet showing actual revenue for the period January 1, 1995, to June 30, 1995, and projected revenue for the period July 1, 1995, to December 31, 1995 (1995 spreadsheet).[1] Based on all of the information that was presented, the judge concluded that the fair market value of the husband's interest in KSC was $4,912,717. Because the wife sought a specific cash payment, rather than a percentage of stock ownership in KSC,[2] the judge awarded the husband 100% of the outstanding shares in KSC but ordered him to pay the wife 30% of KSC's established value, or $1,473,815, in annual instalments over five years. A judgment for divorce nisi was issued on February 22, 1996.[3] The judgment became absolute on May 23, 1996.

In January, 1999, nearly three years after issuance of the

---

[1]A Probate and Family Court judge had ordered that all discovery be completed by July 27, 1995. Both the wife's expert and the husband's expert valued Kenan Systems Corporation (KSC) as of June 30, 1995.

[2]This fact was set forth in the memorandum of decision and order issued by the judge granting the husband's motion for summary judgment on the wife's equity complaint. The judge who heard the motion for summary judgment also presided over the divorce trial. The wife has not disputed this fact, and she has not submitted to this court the transcript of the divorce trial.

[3]On March 25, 1996, the wife filed a notice of appeal from the divorce judgment, but it was subsequently withdrawn.

divorce judgment, Lucent Technologies, Inc. (Lucent), announced that it was acquiring KSC in exchange for 12.88 million shares of Lucent, then valued at $1.48 billion. The sale was completed by March 1, 1999, and KSC became a wholly owned subsidiary of Lucent.

In light of the explosion in value of KSC and, consequently, in the husband's wealth, the wife filed with the Probate and Family Court a complaint seeking relief from the prior divorce judgment by means of an independent equity action and pursuant to rule 60 (b) (6).[4] She asserted that there were compelling and exceptional circumstances necessitating review of the division of property between the parties, particularly the huge disparity between the $4.9 million valuation of KSC in 1996 and its $1.48 billion sale price in 1999. The wife alleged that the gross discrepancy between the estimated fair market value of KSC in 1996 and its established fair market value in 1999 could not be explained by any market condition, by the economy, or by any internal changes in the company, including its product line or marketing strategy. Rather, it was the wife's contention that this discrepancy was directly attributable to the husband's misrepresentations and omissions during the divorce proceedings of material facts pertaining to KSC's financial outlook, which constituted fraud and denied the wife her day in court.[5]

Following the completion of discovery, the husband filed a

---

[4]While the Massachusetts Rules of Civil Procedure would govern the wife's claim for equitable relief under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), see Mass. R. Civ. P. 1, as appearing in 423 Mass. 1404 (1996), the Massachusetts Rules of Domestic Relations Procedure would govern the wife's claim pursuant to rule 60 (b) (6), see Mass. R. Dom. Rel. P. 1 (West 2001). This is a distinction without a difference in the present case because the language of Mass. R. Dom. Rel. P. 60 is identical to the language of Mass. R. Civ. P. 60. Therefore, all references herein will be to the Massachusetts Rules of Civil Procedure.

[5]The wife alleged the following misrepresentations and omissions by the husband: (1) in July, 1993, the husband had reported at a meeting that KSC's business plan predicted 1996 revenues of $65-90 million and 1999 revenues of $130-245 million; (2) as early as 1994, the husband had received offers from Dunn & Bradstreet, Sema Group, and IBM to purchase KSC (or its products) for amounts in excess of $4.2 million; (3) in contrast to the husband's testimony at the divorce trial that KSC's future was risky and pessimistic, he testified in later unrelated litigation that, even as early as 1994,

motion for summary judgment on the grounds that there were no genuine issues of material fact, that the wife's bases for asserting fraud were insufficient as a matter of law, and that her claims were time barred. The judge first concluded that, viewing all of the evidence in the light most favorable to the wife, there was no evidence that she had been defrauded by the husband. Furthermore, even if she had been able to present evidence of fraud by the husband, there was no exception in rule 60 (b) that would allow the judge to grant the wife relief more than one year after entry of the divorce judgment. Accordingly, the Probate and Family Court entered a judgment of dismissal on June 6, 2000.

The wife now argues that the judge erred in concluding that there was no avenue by which she was entitled to relief from the prior divorce judgment more than one year after the entry of such judgment. She contends that she should have been afforded relief pursuant to (1) an independent equity action under rule 60 (b); (2) an action to set aside the judgment for "fraud [on] the court"; and (3) a claim under rule 60 (b) (6). The wife asserts that her evidence demonstrated that the fair market value of KSC at the time of the divorce was corrupted by the husband's fraudulent scheme to misrepresent and omit significant facts that impeded her ability to obtain an accurate valuation of the company. As such, the husband's motion for summary judgment should have been denied.[6]

2. *Independent equity action.* Rule 60 sets forth a comprehen-

---

KSC was well positioned for success; (4) the financial projections in the 1995 spreadsheet had been prepared on a worst case scenario basis, the spreadsheet did not include any information about contracts signed after June 30, 1995, and it did not include any revenue from the United States Postal Service from October, 1995, through December, 1995; (5) the 1995 spreadsheet understated revenues from several known contracts signed before June 30, 1995, by $2.7 million; (6) the 1995 spreadsheet did not disclose three software licensing agreements signed by the husband between August, 1995, and October, 1995, for total fees in excess of $9.3 million; and (7) KSC signed several new licensing agreements in early 1996, including one with France Telecom that had a value of $10.5 million.

[6]The standard of review for a grant of summary judgment is whether, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Theos & Sons* v. *Mack Trucks, Inc.*, 431 Mass. 736, 737 (2000). The judge's

sive framework for obtaining relief from a final judgment or order, balancing the competing needs for finality and flexibility to be certain that justice is done in light of all the facts.[7] See *Barry* v. *Barry*, 409 Mass. 727, 732-733 (1991). See also *Bankers Mtge. Co.* v. *United States*, 423 F.2d 73, 77 (5th Cir.), cert. denied, 399 U.S. 927 (1970). Rule 60 (b) provides, in pertinent part, as follows:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken . . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

The wife would not have been able to prevail on a motion for relief from judgment pursuant to rule 60 (b) (2) or (3) because her complaint was filed more than one year after the final judgment in the divorce proceeding was entered. Unlike actions brought pursuant to subsections (b) (1), (2), and (3), which are subject to the one-year time limitation, there is no specified

determination whether the wife's evidence warranted relief under rule 60 (b) will not be disturbed absent an abuse of discretion. See *Cullen Enters., Inc.* v. *Massachusetts Prop. Ins. Underwriting Ass'n*, 399 Mass. 886, 894 (1987). The judge's determination whether the wife's claims were time barred as a matter of law is reviewed without deference. See *Kendall* v. *Selvaggio*, 413 Mass. 619, 621 (1992). Contrary to the wife's argument, the judge did not apply the wrong standard in considering the husband's motion for summary judgment.

[7]As a general principle, the Massachusetts Rules of Civil Procedure are given the same construction as the cognate Federal rules. See *Chavoor* v. *Lewis*, 383 Mass. 801, 806 n.5 (1981). In all pertinent respects, Mass. R. Civ. P. 60 (b) is identical to Fed. R. Civ. P. 60 (b).

time limitation for bringing an independent action for relief from judgment. Mass. R. Civ. P. 60 (b). See *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 708 n.21 (1985). That said, however, "a party should not be able to avoid the one-year or 'reasonable time' limits of Rule 60 (b) simply by commencing an independent action seeking the same relief." J.W. Smith & H.B. Zobel, Rules Practice § 60.16, at 488 (1977 & Supp. 2001). See *United States* v. *Beggerly*, 524 U.S. 38, 46 (1998) ("If relief may be obtained through an independent action in a case such as this, where the most that may be charged . . . is a failure to furnish relevant information that would at best form the basis for a [r]ule 60 [b] [3] motion, the strict 1-year time limit on such motions would be set at naught"). See also *Wheeler* v. *Springfield Sugar & Prods. Co.*, 15 Mass. App. Ct. 979, 979-980 (1983). To the extent that the claims raised by a party's independent action appear to fall within those provisions of rule 60 (b) that mandate a specific time limitation, but materialized too late to file in a motion to the court which rendered the judgment, the party must raise some additional ground or reason justifying relief after the expiration of the time limitation. See *Geo. P. Reintjes Co.* v. *Riley Stoker Corp.*, 71 F.3d 44, 46-47 (1st Cir. 1995) ("where the body of the Rule contains an explicit time limitation for motions invoking specified grounds for relief, it would make no sense to apply the final general provision, containing no limit of time, so broadly as to cover all the grounds for which the time limit is expressly stated").

Rule 60 (b) does not identify the bases for an independent action. This substantive determination is made by recourse to "judicial principles governing untimely requests for equitable relief from fraudulent judgments" that existed prior to the adoption of rule 60 (b).[8] *Id.* at 48. Historically, relief from a valid and final judgment required more than a showing of common-

---

[8]An independent action to obtain relief from judgment is not to be confused with the ancillary common-law and equitable remedies that rule 60 (b) specifically abolished. See *United States* v. *Beggerly*, 524 U.S. 38, 45 (1998) (while current version of rule 60 [b] makes clear that nearly all old forms of obtaining relief from judgment, including writs of audita querela and bills of review, have been abolished, one old form, the "independent action," has been

law fraud.[9] See *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244-245 (1944) (untimely bid for relief justified only where enforcement of judgment would be "manifestly unconscionable"); *Aetna Cas. & Sur. Co.* v. *Abbott*, 130 F.2d 40, 43-44 (4th Cir. 1942) ("it is well settled that [a conspiracy between plaintiff and his witnesses to present perjured testimony] constitutes no ground" on which court could deny enforcement of judgment in an independent action); *Chicago, R.I. & P. Ry.* v. *Callicotte*, 267 F. 799, 809-810 (8th Cir. 1920), cert. denied, 255 U.S. 570 (1921). Cf. *Coughlin* v. *Coughlin*, 312 Mass. 452, 454 (1942) (petition for modification of decree mandating spousal support not open to attack simply because of false testimony or inadequate presentation of case where "new" evidence was either known at the time of original hearing or was then readily ascertainable).

Cases addressing the scope of fraud necessary to support an independent action under the current version of rule 60 (b) have continued to follow this principle. See *United States* v. *Beggerly, supra* at 46-47 (independent actions reserved for those cases where relief from final judgment necessary to prevent a grave miscarriage of justice). See also *Geo. P. Reintjes Co.* v. *Riley Stoker Corp., supra* at 49 (claim of perjury relating to central issue in case, absent allegation of involvement by an officer of the court, insufficient to maintain independent action because possibility of perjury is a "common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination"); *Gleason* v. *Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988), and cases cited (type of fraud necessary to sustain independent action more narrow in scope than that sufficient to obtain relief by timely motion);

preserved). See also 11 C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 2868, at 396-397 (2d ed. 1995 & Supp. 2001).

[9] In a common-law action for fraud, a plaintiff must prove that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [her] damage." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975), quoting *Barrett Assocs., Inc.* v. *Aronson*, 346 Mass. 150, 152 (1963). Fraud by omission requires both concealment of material information and a duty requiring disclosure. See *Roadmaster Indus., Inc.* v. *Columbia Mfg. Co.*, 893 F. Supp. 1162, 1179 (D. Mass. 1995).

*Travelers Indem. Co.* v. *Gore,* 761 F.2d 1549, 1552 (11th Cir. 1985) (allegations of perjury insufficient to obtain relief from judgment through independent action, which cannot be used as vehicle for relitigation of issues). Cf. *Olsson* v. *Waite,* 373 Mass. 517, 531-532 (1977).

The wife has not presented any evidence to demonstrate that equity mandates granting her relief from the divorce judgment. The 1993 business plan setting forth projected revenues for 1996 and 1999 was not a statement of facts but merely of financial estimates. See *Rodowicz* v. *Massachusetts Mut. Life Ins. Co.,* 192 F.3d 162, 175-176 (1st Cir. 1999) (statements of opinion or belief as to business operations, made without certainty, do not rise to level of statements of fact and do not constitute fraudulent misrepresentations). Moreover, during the divorce proceedings, the wife never deposed the KSC employee who prepared the business plan. The wife also never deposed the two KSC employees on whose testimony she now relies to support her allegation that the husband received offers to invest in or purchase KSC as early as 1994. As to the purported "offer" by Dunn & Bradstreet, the wife was on notice of it pursuant to documents she received from State Street Bank during discovery. The husband's statements in 1995 as to KSC's financial future, whether optimistic or pessimistic, were also opinions, not facts.

To the extent that the 1995 spreadsheet understated or omitted potential streams of revenue, it was clear that the financial information for the time period from July 1, 1995, through December 31, 1995, constituted projected estimates. The wife admits that, during the divorce proceedings, she never deposed the former KSC controller, who prepared the 1995 spreadsheet, to ascertain how it was assembled and what potential revenues were not included. Moreover, the wife's expert prepared his own analysis of the fair market value of KSC and did not indicate that he relied on the 1995 spreadsheet as a source of information for his report.

With respect to the wife's claim that the husband failed to disclose the existence of three licensing agreements entered into during the fall of 1995, as described in her request for production of documents, we note that the husband objected to the

request on the basis of confidentiality. The husband asserted that he was prohibited from disclosing this information absent a court order or the permission of the customers. There is no evidence that the wife sought either a court order or permission from the customers, notwithstanding the fact that the husband made KSC's customer lists available to the wife.

The husband admits that he did not disclose to the wife the existence of several new licensing agreements that were signed during 1996 on the ground that he had no duty to produce such documents after the divorce trial was over. He also contends that he was never asked to speculate about any potential future contracts. "A division of marital assets anticipates a final and equitable distribution of the property owned by the parties at the time of the divorce, and it is from those assets only that a judge can make her division . . . . Thus, in making a division of assets the judge [is] limited, for better or worse, to the property owned by the parties at the time of the divorce." *Heins* v. *Ledis*, 422 Mass. 477, 483-484 (1996). See *Baccanti* v. *Morton*, 434 Mass. 787, 794-796 (2001) (spouse's existing stock options, although uncertain in value and not yet vested, considered assets that may be included when dividing marital estate). The new licensing agreements at issue herein were not entered into until 1996, and there was no indication that negotiations had been manipulated to postpone the execution of such agreements until after the divorce trial was over. The licensing agreements did not become existing assets of KSC for valuation purposes until 1996. Therefore, they would not be included in the determination of the appropriate division of property.[10] See *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 154-155 (1996).

Based on our review of the record, we conclude that the husband's alleged fraud in misrepresenting and failing to

---

[10]In reliance on G. L. c. 208, § 34, the wife asserts that the division of property between former spouses can be examined at any time after the divorce for fairness and reasonableness. Her argument is without merit. "Property settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses. While alimony is modifiable on the showing of a material change in circumstances . . . property settlements are not." *Heins* v. *Ledis*, 422 Mass. 477, 483 (1996). See *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987). Contrast *Brash* v. *Brash*, 407 Mass. 101, 102-105 (1990) (complaint for division of marital assets could be heard ten years after entry of judgment of divorce nisi where such judgment did not include division of marital assets).

disclose significant financial information about KSC during the divorce proceedings, and the wife's "newly discovered" evidence of such fraud, do not justify granting the wife equitable relief from the divorce judgment under rule 60 (b). She has failed to present any evidence demonstrating that enforcement of the judgment would be manifestly unconscionable. Much of the evidence that the wife contends was imperative to an accurate valuation of KSC was, in fact, available to her during the earlier proceedings. While the wife's experts in the present equity action were prepared to testify that the husband's financial misrepresentations and omissions had a significant and material impact on the valuation of KSC, those experts have not suggested that they could have predicted that KSC would explode in value and be worth $1.48 billion by 1999, particularly in light of the major fluctuations in the fortunes of computer companies. The husband did not conceal a marital asset from the wife — KSC was known, valued (albeit imperfectly), and divided. As such, the wife was afforded her day in court. We recognize that there may be instances when allowing a particular judgment to stand would be so contrary to principles of equity as to tip what would otherwise be ordinary fraud into the special category that can invoke a court's inherent power to breach finality. The wife has not presented evidence that this is such a case.

3. *Fraud on the court.* The wife's claim that she is entitled to relief from the divorce judgment because the husband's alleged misrepresentations and omissions constituted "fraud upon the court" under rule 60 (b) is equally unavailing. Even if the wife's allegations were true, the husband's conduct did not amount to fraud on the court.

There is no time limitation that would bar a judge from setting aside a judgment for fraud upon the court. See Mass. R. Civ. P. 60 (b). See also *MacDonald* v. *MacDonald*, 407 Mass. 196, 202 n.10 (1990). "A 'fraud on the court' occurs where 'it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's

claim or defense.' " *Paternity of Cheryl*, 434 Mass. 23, 35 (2001), quoting *Rockdale Mgt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994). The doctrine embraces "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 165 (1983), quoting *Lockwood* v. *Bowles*, 46 F.R.D. 625, 631 (D. D.C. 1969). "A party seeking to demonstrate fraud on the court must prove 'the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to "influence" the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud.' "[11] *Paternity of Cheryl*, *supra* at 36, quoting *MacDonald* v. *MacDonald*, *supra* at 202. Conduct such as nondisclosure to the adverse party or the court of facts pertinent to the matter before it, without more, does not constitute fraud on the court for purposes of setting aside a judgment under rule 60 (b). See *id.* at 36. See also *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. 180, 187 (1990) (nondisclosure of contingent fee agreement did not amount to fraud on the court where disclosure required by contract).

4. *Relief under Mass. R. Civ. P. 60 (b) (6)*. We next consider the wife's argument that she was entitled to relief from the divorce judgment pursuant to Mass. R. Civ. P. 60 (b) (6), the catchall provision of that rule. "In essence, rule 60 (b) (6) vests 'power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.' " *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983), quoting *Klapprott* v. *United States*, 335 U.S. 601, 615 (1949). In the interest of finality of judgments, relief under rule 60 (b) (6) is only to be granted in extraordinary circumstances. See *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257 (1987), and cases cited; *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 228 n.13 (1979). Moreover, relief under rule 60 (b) (6) is only appropriate when justified by some reason *other* than

---

[11]The wife has not presented any evidence that the husband's attorneys were involved in the perpetration of any alleged fraud on the court.

those set forth in rule 60 (b) (1)-(5). See *Bromfield* v. *Commonwealth, supra* at 256. See also *Anderson* v. *Anderson*, 407 Mass. 251, 257 (1990). "In other words, to prevaîl under rule 60 (b) (6), a party must show that there is a reason to justify the relief, and also that the reason is not within the grounds set forth in rule 60 (b) (1)-(5)." *Parrell* v. *Keenan, supra* at 814-815. The wife's proffered reasons for relief — the husband's alleged fraud in misrepresenting and failing to disclose significant financial information about KSC and her "newly discovered" evidence of such fraud — clearly fall within subsections (2) and (3) of rule 60 (b). Because the wife's arguments are not requests for relief independent of subsections (b) (1)-(5), she may not seek relief under rule 60 (b) (6).[12]

*Judgment affirmed.*

---

[12]On September 13, 1999, a stipulation and protective order governing confidential material (protective order) was entered in the Probate and Family Court. On August 14, 2000, the wife filed a motion to remove from impoundment the pleadings and exhibits that she had filed in the Probate and Family Court in opposition to the husband's motion for summary judgment. The wife's motion was denied, and the documents sealed pursuant to the protective order were impounded until September 27, 2010. The wife then filed with the Appeals Court a petition seeking relief from the order of the Probate and Family Court pursuant to G. L. c. 231, § 118, first par. The petition was denied by a single justice of the Appeals Court. The wife now argues in her brief before this court that the Probate and Family Court and the single justice of the Appeals Court erred in continuing to impound the summary judgment record. We conclude that this issue is not properly before us for review. Following the denial of her petition for relief by the single justice of the Appeals Court, the wife pursued *no* further action on this matter. The wife should have filed a petition in the Supreme Judicial Court for Suffolk County seeking to invoke the court's general superintendence power under G. L. c. 211, § 3. See *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 601-602 (2000). Accordingly, this issue has been waived.